# IN THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA

**Kim Brown,**

**Plaintiff**

**TRIAL BY JURY IS DEMANDED**

Fee Paid

> FILED
> CLERK, U.S. DISTRICT COURT
> 6/21/24
> CENTRAL DISTRICT OF CALIFORNIA
> BY: _____ cs _____ DEPUTY

**Vs.**

**No.** _____

**Docket**

CV24-5360-GW(AJRx)

**Shelby County Schools,**

Lewis Thomason P.C.,

Laura Deakins, Cheryl

Rummage estes

Jamie Gibber,

 DOES 1-25

**Defendants.**

_____

## COMPLAINT FOR DAMAGES
## TENURED TEACHER TERMINATION CASE

_____

True and unbiased investigations

1.  1. This is an action alleging fraud, civil conspiracy to commit fraud, abuse of process, and racketeering, and  employment discrimination complaint arising under Title VII of the Civil Rights Act of 1964 42 USC20000 et se (Title VII)  The Plaintiff is also including retaliation, defamation, unlawful termination, and other claims, The Court has jurisdiction under USC 1331 and 1343  Venue is proper under 42 USC 2000 e Title VII and 28 USC  1391

THE PARTIES

2.  Defendant Shelby County Schools formerly Memphis City Schools is a school district operating in Memphis, TN

3. Plaintiff Kim Brown is a former resident of Tennessee.  Plaintiff was the only teacher terminated from a tenured teacher position allegedly based on having low evaluation scores two years in row.

4. Defendants  Laura Deakins, and Jamie Gibber are attorneys based in Tennessee who the Plaintiff sues for abuse of process based on Tennessee law where Attorneys are liable as well as the client.

5. Defendant Shelby County Schools formerly Memphis City Schools  is a school district operating in Memphis, TN.

6.  Defendant Lewis Thomason is the law firm operating in Memphis, TN and surrounding areas.

JURISDICTION AND VENUE

7.  The Plaintiff and all residents reside in different states.  Plaintiff no longer lives in Tennessee. This Court has jurisdiction under diversity of jurisdiction.

Otherwise, the Plaintiff is located in a different state than all of the defendants, and the amount in controversy is more than $75,000.

FACTS COMMON TO ALL CAUSES OF ACTION

8. The Plaintiff is a licensed teacher in School Administration K-12 P.E., Special Education, English as a Second Language, and all subjects K-8. The Plaintiff was a tenured teacher that was terminated on December 20, 2023 not for any misconduct but for allegedly two years in a row of evaluation scores below a 3. The scores were allegedly a score of a 1 and a 2.

9. Both Parties agree that the Plaintiff initially scored a 3 which is satisfactory. The dispute comes in on when the scores changed.   Plaintiff alleges that his scores were falsified  to lower scores of a  "1 and 2" and presented in Federal and State Court as originals.  Shelby County States that after testing scores came back over the summer his observation score fell.  The Plaintiff disputes this and states that test scores came back well before his evaluation score of a 3.


10.    Plaintiff is currently inquiring of  employment in several Metro Los Angeles school districts.  The Plaintiff has quickly discovered that every employment application and prospective employers in most states would like to know Plaintiff'e employment history and the suspension and  termination that happened in Tennessee at Memphis City Schools.

  11. **Plaintiff's Suspension and Termination**: Plaintiff was a tenured teacher with Shelby County Schools.  Plaintiff made several complaints against Tomeka Allen, the school principal at Charjean Elementary School.  At the end of the school year. Plaintiff was recommended for Tenure charges and suspension by Principal Tomeka Allen in 2013 despite the Plaintiff having good evaluation scores of 3's on a scale of 1-5, 3 is meeting expectations.

**12. The Plaintiff was terminated on December 19, 2023 after being reinstated to his teaching position by Chancellor Jenkins on 2-12-2019.** (See Attached order of Chancellor Jenkins)

13.   The impact on Mr. Brown's career has been devastating. He has good teaching ability, has prior good evaluations for 10 years while employed in Memphis. Initiated regular contact with parents tried his best to help the students improve, hold all students to high standards, set limits and adheres to them, and encourages students to meet the standards, regardless of background.

14.    Prior to this event, **Plaintiff's record showed no discipline**. There was no misconduct by the Plaintiff. (See  Plaintiff Teaching Students on Youtube Teaching Video of Lesson he Was Suspended On)

15.  At all relevant times of Plaintiff's employment Plaintiff  performed his duties in an exemplary manner and received good evaluations.. Plaintiff  was rewarded for her exemplary performance when he received a raise on multiple occasions during his employment with Defendant.

16.  **The Plaintiff Was Rehired and Previous Litigation.**  The Plaintiff was Suspended but **REINSTATED by Judge Chancellor JoeDae L Jenkins in February  2019.**  Plaintiff previously litigated before.  However, the Plaintiff argues this is only the second bite at the first apple.  Plaintiff further argues that Preclusion and Res Judicata does not apply because  Plaintiff was **never previously terminated** and the Plaintiff argues that the **reinstatement** of Plaintiff reset Plaintiff's constitutional rights.

17. Plaintiff did not realize his evaluation scores were fraudulently changed until after he filed the federal lawsuit. The Plaintiff sued directly after his termination and the Plaintiff sued again based on Defendants fraudulently changing the Plaintiff's evaluation scores. All this was all *before* the Plaintiff was rehired by Chancery Court Judge Chancellor JoeDae Jenkins.

18.  Also on page 11 of the decision by Judge Jenkins it states: ***"THE DECISION OF THE RESPONDENT IN <u>TERMINATING PETITIONER IS</u> REVERSED AND KIM BROWN SHALL BE <u>REINSTATED</u> AS A <u>TENURED TEACHER</u> WITH SHELBY COUNTY SCHOOLS WITH BACK PAY."*** *(See Attached Decision)*

19. **This was a <u>binding decision by the Court of law.</u>  It specifically states that Kim Brown be <u>reinstated</u> as a teacher with Shelby County Schools.  Plaintiff argues that Any previous action by the Plaintiff is null and void by this order. The rehiring of the Plaintiff is law.**

20.  **Plaintiff's Protected Status:** PLAINTIFF'S gender is male African American.   Plaintiff's Employment with Defendant was from August 2002 to around July 2013  Plaintiff gained tenure with Memphis City Schools also known as Shelby County Schools around 2006. Plaintiff opposed an unlawful employment practice of corporal punishment, cheating, and windows sealed etc. Plaintiff opposed cheating on standardized tests despite being asked to do so.

21. **The Plaintiff is Seeking Police and F.B.I. Investigations into Shelby County Falsification of Scores and Asking Attorney General Merrick Garland to Intervene**:  The Plaintiff has for the first time informed law enforcement of what Shelby County Schools has done with his test scores  and  filed a police report concerning the falsification of evaluation scores.  The District fraudulently changed the Plaintiff's evaluation scores to unsatisfactory scores of  "1" and "2" from satisfactory scores of all "3's" and retaliated against the Plaintiff because he Plaintiff filed a lawsuit.   The criminal division of the justice department  in Washington D.C. has written back to the Plaintiff directing Plaintiff to contact the F.B.I. ( See Attached Letter from Justice Department)

22.  Plaintiff has also written Tennessee Governor Wlliam Lee,  F.B.I. Director Christopher Wray,  U.S. Attorney for the Western District of Tennessee Kevin Ritz, A.G. Deputy Chief Karen Woodard, Assistant Attorney General for Civil Rights Kristen Clark. United States Deputy Attorney General Lisa Monaco. The Plaintiff has written certified letters to these individuals to intervene and explained the complex scheme of Shelby County Schools. Also explaining how Defendants successfully perpetrated a fraud on the court system. **(See Attached Letters to Each listed Law Enforcement Individual) (See Attached Response From Justice Department Criminal Division Directing Plaintiff to Contact the F.B.I.)**

**SCHOOL YEAR THAT LEAD TO MR. BROWN'S SUSPENSION AND THEN TERMINATION ON DECEMBER 19, 2023.**

23.    The school-year 2012-13 Was Tomeka Allen's first time as a principal anywhere. She was assigned to Charjean Elementary a few days before school started. Mrs. Allen started harassing the Plaintiff using abusive language over the course of weeks beginning at the beginning of the school-year not limited to making frequent comments that since you were a "Man"  the students were supposed to be scared of you.   And that since you were a "Man" you were supposed to have more effective classroom management than the women in classroom management in general.

24.    Shelby County Schools  intentionally lets principals disparage teachers and lets them use racist language and Cheat on tests with impunity which Plaintiff will explain later in this Complaint  (See Attached Exhibit 1 News Article Principal Tracey Greer REHIRED by  After Calling Students N_ _ gers hereinafter N-Word and Encouraging Cheating on Tests)

25.     During this school year the Plaintiff was discriminated against in that all men teachers were required/mandated to be outside on duty while women teachers were not. Sometimes it was very cold or hot, but the women teachers had no such requirements mandated upon them.

26.     There were three second grade teachers, two men and one female. The female was given a class of predominated Hispanics "students with good behavior" mostly hispanics while the men teachers were given all Black students who coincidentally had challenging classroom behaviors due to being surrounded by a high-crime, poverty stricken, low income, drug infested environment.   The teachers were then subject to harassment when they had difficulty controlling students.

27.     The Plaintiff alleges he was discriminated against because of race also.  The Principal assumed that because he was an African American male man  then he would receive all African American students.   This resulted in Kim having a disproportionate amount of students with misbehavior in one classroom.  This was simply due to the dynamics of the area, not race of the students.   The school was simply located in a high-crime area and has since closed due to low performance. These students would have more behavioral problems than other students. This had a disparate impact on the Plaintiff.  Mr. Sneed the other African American man left shortly after the Plaintiff was suspended.


28   Around October 2nd, 2013 the Plaintiff had his first evaluation and requested that the evaluation be recorded. It was video recorded and Tomeka Allen appears in the video.   Ms. Allen gave Kim all low scores.   The video lesson shows the lesson was much  better than the scores given. Plaintiff still scored a "3" at the end of the school year which is good.(See Exhibit 2 Youtube Video of Kim Brown Teaching)

29 In the video for instance Ms. Allen stated that students were misbehaving. However, the videos do not show this.  The students were not getting up out of their seats misbehaving as Ms. Allen states.

30 The Plaintiff also filed a formal grievance against Tomeka Allen with the Memphis Educational Association on October 10, 2013 due to her hostile behavior towards the Plaintiff.  The Plaintiff repeatedly requested a transfer to another school.

31. The Plaintiff was not transferred in October and around January 4, 2012 the Plaintiff started having problems with Mrs. Allen again. Mrs. Allen started yelling at the Plaintiff again and started mentioning his gender about him  being " A Man" Mrs. Allen meant that because of the Plaintiff's  gender he was supposed to outshine the women teacher, and she also accused the Plaintiff of filing complaints against her.

32.      Mr. Brown went to the director of Labor Relations  on around  January 7, 2013 to file another complaint on Mrs. Allen.  The Plaintiff mentioned the illegal activities that were going on at Charjean Elementary school.  (Charjean has since closed and been boarded shut due to low performance)

33.      The Plaintiff reported that Charjean Elementary was still using corporal punishment despite corporal punishment being banned by Memphis City Schools at the time.  The Plaintiff  has refused to engage in corporal punishment or demean the students just to have them comply behavior-wise.   The Plaintiff informed the district that he was being discriminated against.

34.      The Plaintiff as a licensed school administrator knew this was wrong and mentioned this to the principal who was unconcerned.  Some employees at the

school  did engage in corporal punishment. Plaintiff took secret video and statements from students about abuse going on at the school.  The Plaintiff still believes he has possession of some of these videos and documentation of abuse.

35. Rachel Williams, the secretary for Charjean Elementary, was supposed to accompany the Plaintiff on his office visit to Labor Relations to report that she had been assaulted by the Principal but feared retaliation  and job loss from the District.

36.  The Plaintiff took upon himself to inform the office of Labor Relations and inform the District of Rachel Williams being assaulted by the principal and Mrs. Allen trying to force all the Men teachers out of her school.

37.  The Plaintiff told the district that Rachel Williams had stated personally to the Plaintiff that she had been assaulted by Tomeka Allen. The Plaintiff also spoke with the school counselor, building engineer and other teachers who related that they knew about the assault and had already been told the news of the assault and they had urged her to file a police report but she was afraid.

38. The Plaintiff was rebuffed in his allegations by the labor relations department. It is also the policy of the district and the labor relations office to inform the principal of all allegations made by teachers. All emails and complaints about principals are actually given and conveyed to the principals for their response. It is the policy to let principals read complaints made by teachers.

39. The Plaintiff again pleaded for a transfer to a different school in this meeting and was denied. The Plaintiff complained also that he was discriminated against. The Plaintiff was denied a transfer, However, the labor relations department did tell the Plaintiff that he could request someone else to perform his remaining evaluations.

39. The next day the Plaintiff informed Principal Ms. Allen via email and the director of Labor Relations that he was requesting someone else to do his evaluations. The Plaintiff also sent a follow-up email the next day to labor relations that he was being harassed and in a hostile working environment and requesting such a transfer

40. Mr. Brown went a step further and went directly in person to Mrs. Allen's supervisor's office at the regional office and complained about Mrs. Allen's conduct and that he was being discriminated against based on and the other illegal activities  going on at the school that Mr. Brown refused to participate in.

41. Mr. Hawkins took notes and stated he would talk to her about the grievances stated in the meeting. This included things the Plaintiff had previously informed the office of labor relations about.

42.  The very next day January 8, 2013. Mrs. Allen  called the Plaintiff into her office and  exploded with rage. She started screaming at the top of her lungs that nobody was going to evaluate him but her. She started belittling the Plaintiff and about being a sorry man and letting women outdo him and constantly sending emails to the district.

43. The Plaintiff had to step out of the meeting and called Mrs. Barbakous, a teacher at the school who is also a member of the Memphis Educational Association as a representative. Mrs. Barbakous politely asked if he could watch her tone. Mrs. Allen calmed down after she came into the meeting.

44.  On January 9, 2013 Mrs. Allen came into the Plaintiff's classroom and did an unannounced formal evaluation and gave the Plaintiff low scores overall in almost every area despite the Plaintiff meeting the rubric for expectations  and the student's conduct was perfect while she was there.  She was upset because the Plaintiff filed a grievance on her which she had stated previously.

45.  Ms. Allen told the Plaintiff earlier that she would "cheat" on his evaluation. and change his evaluation score.  She  made the statement that "I told you in October that I would consider changing your evaluation scores but since you want to run down to the board, I'm not changing anything.

46. Ms. Allen never came into the Plaintiff's classroom again to do any informal evaluations whatsoever after the January complaints/incidents She only came to do the remaining formal evaluations and never came again after the Plaintiff complained to her supervisor and the labor relations office.

47.  Around February 1, 2013   Mrs. Allen recommended that Mr. Brown participate in a program called PAR  (Peer Assistance Review)  in which a teacher can receive assistance from a teacher in the district who had high evaluation scores, in order to get their scores high also.  Allen previously had given the Plaintiff low observation scores on the video recorded lessons that others had rated high.

48.   The PAR program has never been in existence and it was toward the latter end of the school year when the program started. It started toward the end of February.

49.    Mr. Brown did not have to participate in the PAR program. It was optional but he was told in a meeting by the PAR teacher Ms. Kecia Helminski that he would have to sign a form stating he chose not to participate and this would go into his file.  Mr. Brown was told that it would not look good for him to refuse assistance.  Mr. Brown participated since it was his first full year in 2nd grade and he welcomed any feedback/post-conferences.

50.     The program called for the remaining two evaluations to be performed by someone from the PAR program.  Mr. Brown was told that Ms. Allen would not do anymore evaluations. However this was not true.  Mrs. Allen did evaluate Mr. Brown again.

51.  The PAR teacher only met with the Plaintiff one time to discuss the Plaintiff's success and failures.  There were no teaching strategies  given.   Afterwards she never met again.  She came just a few times for less than 10 minutes then would leave.  She would just leave  a pink sheet which stated some of the things she saw and observed in the Pintiff/s classroom. The program was dysfunctional. The Plaintiff asked the PAR teacher why she wasn't coming to the school.  Her response was that she was afraid of Ms.Allen. She stated that she heard that she went off on someone.

52.    The PAR program did not fulfill its obligations as stated.  They  enticed the Plaintiff to participate in the program by stating the principal would not do the remaining two evaluations that they would do them. This was not true.  The principal did the remaining two evaluations. The PAR teacher did not do the remaining two evaluations as they promised.

**Plaintiff Still Score A 3 at the End of The School year**

53.  However at the end of the school-year, **Mr. Brown did receive a Teacher Effectiveness Measure score (TEM) of  a "3"**  which means the teacher is "meeting expectations. This is the cumulative score that counts not just the evaluations. Mr. Brown was overjoyed and tremendously excited and happy about this considering the challenging school year he had with Mrs. Allen

54.  The Plaintiff also received a TEM score of a "3" the previous school-year which is meeting expectations at the end of the school year when the scores are released from the state.

55.  On May 10, 2013 the Plaintiff was called into the Principal's office at Charjean Elementary school and was told that he would be recommended for non-reelect or suspension for the 2013-2014 school year. The cause being "inefficiency and neglect-of-duty" two of 5 areas whereby a tenured teacher can be considered for dismissal.

## PreTextual Letters Were Not Enough To Terminated a Tenure Teacher With No Prior Disciplinary Measures At Any School

56. On May 23, 2013 around 5 minutes before the Plaintiff was to start summer vacation and one day after the students had been dismissed, the Plaintiff was called into Mrs. Allen's office and handed four letters unfolded on cardboard stock paper. The letters were letters of reprimands which the Plaintiff never had received. They fraudulently had various dates  on them to appear that they were given on these dates.

57. There were two letters of reprimand in support of the Plaintiff's dismissal dated for May 1. 2013,  March 25, 2013 and one for April 25, 2013. But were only given on May 23, 2013. The contents of the letters were untrue and the Plaintiff immediately appealed to his Union representative.

58.  The Plaintiff had never in ten years of teaching received any written letters of reprimand from any principal.

59. Mr. Brown now briefly lists the contents in the letters.    In the letter dated May 1, 2013 it was stated by Ms. Allen that the Plaintiff was to go to another teacher's room and observe her reading block. Tomeka Allen stated that the Plaintiff did not go to Brandi Murrell's room to observe a lesson and this is considered "neglect of duty and inefficient."

60. However the letter was false. The Plaintiff did go to Brandi Murrell's room to observe a lesson and took away two things he could use.  Mrs. Murrell can verify this.  The second letter for May 1, stated that the Plaintiff did not follow suggestions given in a post-conference including, calling parents to recognize success, and implementing student of the week, and using cues to remind students etc.

61. The letter further states that the Plaintiff is being reprimanded for only using "choral reading" throughout the entire reading block."  This is not true. Even the Principal's own notes in the TEM evaluation system show that the Plaintiff does not use choral reading for the entire reading block.

62. Each of the letters are untrue and nothing but a malignant libel and are pretextual fabrications, and retaliation to suspend and terminate the Plaintiff for filing grievances and complaining to her supervisor previously.

63.     The Plaintiff also notes that Ms. Allen gave more frivolous and pretextual reasons in her letter  given to labor relations that the Plaintiff was not using the "whiteboard protocol"  meaning a certain way that teachers write their name, date and objectives on the board. However, Ms. Allen had given out two different sheets showing the white board protocol and the Plaintiff invited Mrs. Murrell to check and see if it was correct and she stated that it was the correct way. It doesn't make sense that a teacher would even be written up for how he or she writes their name and date on the board.

64. The reasons are frivolous and a teacher should not be written up or recommended for suspension  for this when there are more pressing concerns with teaching.  Plus, the Plaintiff never had any problems with the way he writes his name and date and objectives on the board until he filed a grievance. Almost every teacher had a different way of using the whiteboard protocol and they were not given a reprimand.

65.  The Plaintiff also notes that in the final reprimand letter that the Plaintiff is aware of, Ms. Allen stated that he did not get all professional development hours in by February 15, 2013. However, the Plaintiff did complete his professional development hours.

## The Plaintiff is Suspended Without Pay

66. Mr. Brown had a meeting/hearing on June 10, 2013 with the office of labor relations to discuss the principal's recommendation for termination.  The Plaintiff was notified by the office of labor relations for Memphis City Schools on June 11, 2013 that he will be suspended without pay effective July 29, 2013 and will be recommended for termination.

67.   The Plaintiff sued in Federal Court and learned a few weeks later that all his scores of 3's were changing to a 1 and a 2. The Plaintiff's suspension was based on evaluation scores only of a 1 and 2.

68.  The Plaintiff next lists cheating allegations against Shelby County which Plaintiff's states makes allegation that Shelby County falsified his TEM scores plausible.

## SHELBY COUNTY SCHOOLS  ENCOURAGING CHEATING AND CALLING  STUDENTS Ni__ _ ERS  (N-Word)  WHICH IS DEMONSTRATED BY THE REHIRING OF TRACEY GREER,

69. Shelby County Schools was a hostile overall environment while the Plaintiff was there.  The District encourages Principals to call student's  "N-Word" which is a term deeply offensive to African-Americans.   Principal Tracey Greer was rehired

after caught on Audio calling students the N-Words and this was broadcast by ALL THE LOCAL NEWS STATIONS  Then after resigning Principal was **REHIRED.** (See Exhibit 1)

70.  Then fired again **ONLY When** the rehiring became **PUBLIC** knowledge and made it to the local News Stations. (See Google and Exhibit 1, Tracy Greer Principal  resigned for using the N-word Memphis City Schools when talking to teachers )  and trying to get teachers to cheat on formative tests. (See Also Terry Ross Memphis City Schools  Accused of Cheating Exhibit 1)

71. The online article reported by the local news station quotes Greer as saying:

 "**What I'm saying is, we got to get us a plan in place," she said in the audio recording leaked by a faculty member at Florida-Kansas Elementary School**. "**Get you 10 damn folks, screw down your damn kids. Make sure you got them N------- tight. You understand me? Get them 10 N------- tight."**

**School board member David Pickler calls it disgusting**.**"The way she referred to these children, is horrifying," said Pickler. Pickler commends those who reported Greer and hopes others who may act similarly learn their lesson"**

72.  These are the types of Principals Shelby County Schools values.  This gives more weight to the Plaintiff's arguments  that Shelby County Schools values cheating and that they "Cheated" and improperly changed the Plaintiff's evaluation scores to a 1 and 2 after he filed a lawsuit.   See also letter by Principal Ronnie Macklin who accuses Shelby County of Cheating;  (See Exhibit 1: https://www.actionnews5.com/story/25469943/audio-recording-reveals-principal-refer-to-students-in-derogatory-manner/

73.  In an article in the city's newspaper called the Commercial Appeal it was stated by Tikeila Rucker, the president of the United Education Association of Shelby County. **"This sends a message to other employees that it is OK to be unprofessional, lack morals and integrity because there are not any consequences or systems in place to hold one accountable."**

74.  The local newspaper article also states that ."Two weeks before Greer resigned from Shelby County Schools in 2014, **the district had suspended her with pay pending an investigation into the cheating and name-calling allegations.** Her file did not include the results of the investigation nor her response to the allegations. At least one teacher told district officials Greer directly asked him or her to help students cheat, according to investigator notes in Greer's file."   (See Exhibit 1)

75.   **The Plaintiff alleges he also  had to work for this Principal  Tracey Greer for several years while at Memphis City Schools** and was repeatedly pressured to engage in shocking illegal activities but REFUSED to.  Plaintiff was ultimately suspended and terminated.

76.   Had Plaintiff decided to engage in illegal activities and also cheat the Plaintiff's evaluation scores would have increased tremendously and the Plaintiff would still be employed.

77.   The news article further states that " The district earlier had reprimanded Greer for lack of professionalism. As an assistant principal of Getwell Elementary in 2003, Greer told a parent that the school "served ghetto children" and "this is just a ghetto area," according to a report in her file written by then-supervisor Terry Ross. (Ross himself is under investigation for separate allegations of improper grade changing and employee harassment.)"

78. "That literally saddened me beyond recognition because how we feel about our children is how we serve them and treat them," Ross said in his reprimand of Greer."   Ross later was transferred because of improper grade transfer cheating allegations.

79. There is a  severe culture of cheating,  dishonesty and child abuse, and an insane focus on state test scores at Shelby County Schools all under the watch of then superintendent Doresy Hopson.  Hopson only terminated Tracey Greer after the news media started investigating  See Attached Exhibit 1

80.   At Shelby County SchoolsThe N-word was tossed around frequently  and "there is no one to complain to. Teachers have been urged to help students cheat on state testing. Shelby CountySchools when Doresy Hopson was superintendent was a racketeering influenced corrupt organization.    The system is similar to Atlanta Georgia's a few years ago where the Superintendent Beverley Hall and others were criminally indicted and arrested  under Federal RICO law for helping students cheat.

81. According to an online article this is the school district that Superintendent Doresy Hopson worked in at the district office before going to Memphis and most likely worked with Beverly Hall.   The district under his watch also has been accused of cheating and illegal activities.  Though Plaintiff is not accusing Dorsey directly. But he did oversee the district and knew or should have known what was going on.

82. At least 7 high schools in Memphis under Dorsey's watch were publicly accused of cheating.  Doresy received an $15,000 bonus for helping improve the District and make gains.  Superintendent Doresy Hopson resigned the next year. Some of the schools were Kingsbury, Hamilton and Trezevant High School.  ( See Beverly Hall Superintendent Indicted) (See Exhibit 1)

**Shelby County Falsified Plaintiff's Evaluation Scores**

83    Shelby County has a pattern of cheating and they did indeed falsify the Plaintiff's evaluation scores from all 3's which is good to a 1 and 2 which is unsatisfactory just to uphold the Plaintiff's termination.  They presented these scores in Federal and State Court as legit scores.  All this was under the watch of Superintendent Dorsey Hopson.   The Plaintiff is presently seeking an F.B.I. investigation and any other law enforcement investigation in this matter

84.  **Abuse of Process.**  After the Plaintiff won $500,000 in back pay. The defendants were obviously bitter about being assessed attorney fees and **intentionally harassed the Plaintiff in their pleadings in fall of 2022 and in August 2023** to intentionally increase the cost of litigation and attorney fees. The Defendants brought up unrelated civil litigation that was over 10 years old for improper purposes.  Including harassing the Plaintiff in their writings over a medical procedure that was almost 20 years old when they brought it before the Court.  The Plaintiff was not brought up on teacher tenure charges over prior litigation and they just did this to harass the Plaintiff.

85.  There was no citation in the lower court record of this litigation. Only after the Plaintiff won back pay of almost $500,000 dollars then the defendants just suddenly brought it up "out of the blue." and mischaracterized it all to make the Plaintiff look bad on appeal. They abused the process of which discovery was intended.

86.  The Plaintiff's attorney and everyone was bewildered as to where did all this come from?  They were dishonest about the prior litigation and  misrepresented and  twisted Plaintiff's prior litigation to harass the Plaintiff, for improper purposes

and to make the Plaintiff despised before the Courts to look as terrible as possible in a civil litigation case, and to increase attorney fees.  They did this in their pleadings twice. (See Attached)

87.  The Plaintiff alleges that The Defendants  succeeded in reversing said verdict by cheating and fraudulently changing the Plaintiff's evaluation scores to a "1" and "2" **after** Plaintiff filed a lawsuit in Federal Court.

88.  Plaintiff's Abuse of Process  count is  timely because this was never litigated and the occurrence happened in August 2023 and in 2022.    Plaintiff has also just recently asked law enforcement to step in for the very first time to look into the falsification of Plaintiff's evaluation scores.  Shelby County committed aggravated perjury and presented fraudulent evaluation scores to the state and federal courts.

89.  The entire school district is discriminatory in that they choose Superintendents and principals based on Race and  refuse to hire qualified White applicants for Superintendent and various Principal and District level  positions despite having an abundance of qualified applicants.

90.   Also See Attached Letter of White/Caucasian  Principal Ronnie Mackin's resignation letter who also accuses Shelby County Schools of cheating and discrimination., His allegations were sustained in part by the Butler Snow law firm (See Exhibit 1)

91.   He is stating exactly what the Plaintiff is stating about Cheating at Shelby County Schools which should give pause and makes the Plaintiff's allegations plausible that Shelby County Schools "cheated" in Federal and State Court and changed the Plaintiff's evaluations scores from good scores 3's to poor scores of a 1  and a

**92. Wherefore,** The actions of the district against the Plaintiff were pretextual meaning that the proffered reason for the Plaintiff's suspension had no basis in fact

and the reasons given did not actually motivate the districts actions, but rather it
was malice for the Plaintiff.

93.  These deficiencies in these areas pointed out by Ms. Allen were never brought
to the Plaintiff's attention so there was no notice and opportunity to cure.
Moreover, that the reasons stated by the district was insufficient to warrant
suspension without pay to a tenured teacher, who has never been in trouble,
alternative disciplinary methods could have been used.

94.  Ms Allen never referred the Plaintiff to the office of labor relations for
discipline which is required for employees that are insubordinate or misbehaving.
The conduct of the district and its agents was motivated by malice and a reckless
disregard for Mr. Brown's rights under the constitution and the law.

95. The Plaintiff was injured by these actions and suffered a suspension from his
employment and a recommendation for his termination and also suffered emotional
distress including insomnia, headaches, depression, stress, worry loss of appetite,
homelessness at times. Otherwise the Plaintiff has been injured and has suffered
damages, general and special including financial loss and damage/defamation to
his teaching and professional reputation in the state and district. Defendants
perpetrated a fraud on the federal and state court system

**Plaintiff's Damages**

**96. Plaintiff's Economic Damages:** As a consequence of Defendant's conduct,
PLAINTIFF has suffered and will suffer harm, including lost past and future
income and employment benefits, damage to her career, and wages, overtime,
unpaid expenses and penalties as well as interest on unpaid wages at the legal rate
from and after each payday on which those wages should have been paid, in a sum
to be proven at trial. 23.

**97. Plaintiff's Non-Economic Damages:** As a consequence of Defendants'
conduct, PLAINTIFF has suffered and will suffer psychological and emotional

distress, humiliation, injury in standing in the community,  and mental and physical pain and anguish, in a sum to be proven at trial. 24. Punitive Damages: Defendants conduct constitutes oppression, fraud and/or malice under California Civil Code section 3294 and,Tennessee Code § 29-39-104 (2021) thus, entitles PLAINTIFF to an award of exemplary/punitive damages.

98. a. **Malice:** Defendants' conduct was committed with malice within the meaning of California Civil Code section 3294, and  Tennessee Code § 29-39-104 (2021) including the following: (1) Defendants acted with intent to cause injury to PLAINTIFF and/or acted with reckless disregard towards PLAINTIFF'S injury, including terminating her employment and/or taking other adverse job actions against PLAINTIFF because of PLAINTIFF'S race, gender and/or her good faith complaints;

99. and (2) Defendants' conduct was despicable and committed with willful and conscious disregard of PLAINTIFF'S rights, health, and safety, including PLAINTIFF's right to be free of discrimination, harassment, retaliation, and wrongful termination.

100. b. **Oppression:** In addition, and/or alternatively, Defendants conduct was committed with oppression within the meaning of California Civil Code section 3294 and or TN Code § 29-39-104 (2021 )including Defendants' actions against PLAINTIFF because of PLAINTIFF'S race, gender and/or her good faith complaints were "despicable" and subjected PLAINTIFF to cruel and unjust hardship, in knowing disregard of plaintiff's right to a workplace free of discrimination, harassment, retaliation and wrongful termination.

101.  c. **Fraud:** In addition, and/or alternatively, Defendants conduct was committed with oppression within the meaning of California Civil Code section 3294, and Tennessee Code § 29-39-104 (2021 )including the fact that Defendants

asserted false (pretextual) grounds for terminating PLAINTIFF'S employment and/or other adverse job actions intended to deprive plaintiff of her legal rights.

102. **Attorneys' Fees:** PLAINTIFF has incurred and believes he will continue to incur legal expenses and attorneys' fees as a result of Defendants' conduct.

103. Exhaustion of Administrative Remedies: Plaintiff has exhausted his administrative remedies and has obtained his right to sue letter which he now serves with this Complaint.

104. The Plaintiff also reminds the court that it has inherent powers to control its processes when The District Courts of the United States possess inherent equitable powers over their process to prevent abuse, oppression, and injustice and when it suspects fraud on the Court.


**Count One**

**105 Mr. Brown's Retaliation Claim Against the District**

*All allegations of the complaint ate incorporated herein by reference*

Defendants: Shelby County Schools


106. The district is an employer subject to Title VII under which retaliation against persons who have exercised in protected rights is prohibited

107. In complaining about illegal behavior in the district/Ms. Allen. Mr. Brown engaged in protected activity under Title VII. Mr. Brown advocated on behalf of the students at Charjean who had been the victim of such illegal activity. Mr. Brown refused to spank students at Charjean otherwise corporal punishment on child abuse.

108. Mr. Brown suffered adverse employment actions by agents and employees for the District for the exercise of protected rights, ir the District through its agents

and employees caused his contract to be nonrenewed on untrue charges, harassed him and retaliated against him

109.   The district brought unsubstantiated charges against him to leverage his dismissal, imposed heightened levels of scrutiny not given to other teachers in their evaluation, defamed him, gave him a low evaluation which affects his TEM score, and ultimately recommended him for dismissal and interfered with his liberty and property interests.

110.   A motivating factor in the District's retaliation was that he reported abuse of children and of an employee and illegal activities, a protected activity under Title VII. The district's actions were in retaliation for his exercise or protected rights.

111.   The Plaintiff also complained to the Charjean building engineer who relays concerns to the principal. that the windows in the entire school were/are screwed shut" to prevent break-ins and such is a safety hazard.

112. Plaintiff refused to engage in cheating also despite being asked by the district to help students cheat. Had Plaintiff helped students cheat then Plaintiff would have had really high observation scores and thus still be employed with Shelby County Schools.

113.   The district has no legitimate non-discriminatory reason for treating Mr. Brown as it did.  Retaliation for exercise of protected rights is a form of invidious discrimination prohibited by law.  By virtue of the foregoing the District violated the prohibition against retaliation as set forth in Title VII of the 1964 Civil rights Act.

114. The District Retaliated against Mr. Brown **AFTER** he filed a lawsuit by fraudulently changing his evaluation scores to a 1 and a 2 after he filed a lawsuit. Mr.Brown is presently seeking an investigation by law enforcement.   The District has a prior history of encouraging cheating. See Tracey Greer terminated and rehired after encouraging cheating and using racist language

115. PLAINTIFF has suffered special damages including but not limited to past and future loss of income, benefits, medical expenses, and other damages to be proven at time of trial.  As a direct and proximate result of the unlawful conduct of Defendants Shelby County  and/or DOES 1-25, and each of them, PLAINTIFF has suffered general damages including but not limited to shock, embarrassment, physical distress and injury, humiliation, emotional distress, stress and other damages to be proven at the time of trial.


**COUNT TWO**

  **Mr. Brown's Common Law WhistleBlower Claim against the District**

All other allegations in this Complaint are incorporated herein by reference

(Against Shelby County and DOES 1-25)


116. Mr Brown gave notice to the district and its senior administrative personnel of corporal punishment of students at Charjean including abuse of the principal's secretary by the principal. Mr. Brown refused to participate in illegal activities. Mr. Brown refused to engage in corporal punishment.

117.  The district did not properly act on Mr. Brown's information. The District responded by retaliating against Mr. Brown and eventually adoption charges with the intent to terminate Mr. Brown's employment,Brown refused to engage in cheating at the district. Had Brown done so his evaluation scores would have been really high and he would be still employed. Defendant changed the Plaintiff's score to a 1 and 2 after the Plaintiff filed a lawsuit and thus retaliated against the Plaintiff.

118 The actions of the District and its senior administrative personnel in doing so constitute  impermissible reprisal. Mr. Brown has been harassed as a result. Mr. Brown seeks all remedies to which he is entitled for this common claim

119.  PLAINTIFF has suffered special damages including but not limited to past and future loss of income, benefits, medical expenses, and other damages to be proven at time of trial.  As a direct and proximate result of the unlawful conduct of Defendants Shelby County  and/or DOES 1-25, and each of them, PLAINTIFF has suffered general damages including but not limited to shock, embarrassment, physical distress and injury, humiliation, emotional distress, stress and other damages to be proven at the time of trial.

**COUNT THREE**

**Mr. Brown's 42 USC 1983 Property Interests Against the District**

All other allegations in this Complaint are incorporated herein by reference (Against Shelby County and DOES 1-25)

120.  Mr. Brown had property interests in his contract as a tenured teacher which are protected under the due process clauses of the United States Constitution

121.  Acting under the color of state law, the District and its agents deprived Mr. Brown of property interests in his contract without due process of law and based on false allegations. Mr Brown was injured as a result of the Defendant's acts. The district and its agents are liable for those injuries. The District fraudulently changed Plaintiff's evaluation scores After the Plaintiff filed a lawsuit on the Court.

122. PLAINTIFF has suffered special damages including but not limited to past and future loss of income, benefits, medical expenses, and other damages to be proven at time of trial.  As a direct and proximate result of the unlawful conduct of Defendants Shelby County  and/or DOES 1-25, and each of them, PLAINTIFF has suffered general damages including but not limited to shock, embarrassment, physical distress and injury, humiliation, emotional distress, stress and other damages to be proven at the time of trial.

**COUNT FOUR**

**Mr Brown's 42 USC 1983 Liberty Interests Against the District**

All other allegations in this Complaint are incorporated herein by reference

(Against Shebly County and DOES 1-25)


123. Defendants actions occurred under color of state law and violated 42 USC 1983 and the due process clause of the 14th amendment of the Constitution of the United States. Mr. Brown's constitutional right to equal protection of the law was violated.

124. Defendants Shelby County, Laura Deakins and Jamie Gibber acting alone or in collusion with each other denied Mr. Brown equal protection of the law in his employment. Their conduct damages his reputation in the educational community and interfered with his ability to engage in his profession and pursue other business/employment interests.

125. Other teachers' evaluation scores were not fraudulently changed from all 3's to a 1 and a 2. Simply for taking legal action, Brown was denied his equal protection rights under the law

126. Their conduct was motivated by malice or a reckless disregard for Mr. Brown's rights under the Constitution and the law. Pretextual charges of unprofessional conduct and adoption of charges seeking termination of his employment for false reasons harmed Mr. Brown's professional name and reputation. Mr. Brown is entitled to a name-clearing hearing by jury and an award of damages. The District retaliated against the Plaintiff after he filed a lawsuit.


127. PLAINTIFF has suffered special damages including but not limited to past and future loss of income, benefits, medical expenses, and other damages to be

proven at time of trial.  As a direct and proximate result of the unlawful conduct of Defendants Shelby County, Shelby County, Laura Deakins, Cheryl Estes, Lewis Thomason and Jamie Gibber  and/or DOES 1-25, and each of them, PLAINTIFF has suffered general damages including but not limited to shock, embarrassment, physical distress and injury, humiliation, emotional distress, stress and other damages to be proven at the time of trial.

**COUNT  FIVE Mr. Brown's Equal Protection Against the District**
 All other allegations in this Complaint are incorporated herein by reference (Against Shelby County and DOES 1-25)

128. Defendant's actions occurred under color of state law and violated 42 USC 1983 and the due process clause of the 14th amendment of the Constitution of the United States. Mr. Brown's constitutional right to equal protection of the law was violated.
129. Plaintiff's evaluation scores were fraudulently changed from 3's to a 1 and 2 to support the dismissal by Tomeka Allen.  Because of Plaintiff's race and gender the  Plaintiff was subject to undue harassment and scrutiny that other individuals were not subject to. Other teachers' evaluation scores were not changed.
130. Defendants acting alone or in collusion with each other denied Mr. Brown equal protection of the law in his employment. Their conduct damages his reputation in the educational community and interfered with his ability to engage in his profession and pursue other business/employment interests.

131. Other teachers' evaluation scores were not fraudulently changed from all 3's to a 1 and a 2. Simply for taking legal action, Brown was denied his equal protection rights under the law

132. PLAINTIFF has suffered special damages including but not limited to past and future loss of income, benefits, medical expenses, and other damages to be proven at time of trial.  As a direct and proximate result of the unlawful conduct of Defendants  Shelby County, Shelby County, Laura Deakins, Cheryl Estes, Lewis Thomason and Jamie Gibber  and/or DOES 1-25, and each of them,

133. PLAINTIFF has suffered general damages including but not limited to shock, embarrassment, physical distress and injury, humiliation, emotional distress, stress and other damages to be proven at the time of trial.


**COUNT SIX  Mr. Brown's Gender Discrimination against the District**

All other allegations of this Complaint are incorporated herein by reference (Against Shelby County and DOES 1-25)


134.  In complaining about gender discrimination  behavior and bullying and harassment by Ms. Allen the Plaintiff, a member of a protected class engaged in protected activities under Title VII of the 1964 Civil Rights Act.

135.   The district subjected Mr. Brown to adverse employment actions that had both disparate treatment and impact. Tomeka Allen made several references to the Plaintiff's gender along the lines of "You a man"  your students are supposed to be scared of you and you suppose to have them in line.

136. The Plaintiff was given low evaluation scores in teaching ability  simply for being a man, while women were given high evaluation scores despite the fact that the Plaintiff's teaching ability and the lesson taught that Allen observed was of high quality and observers who watch the video of Plaintiff teaching rate the lesson as high. (See Youtube Video Plaintiff Teaching)

137.   In fact two other men, Mr. Green, a senior building engineer, stated she makes accusations then throws her hands up and yells no when you try to explain

your position. Mr Hardy stated similar things of her yelling.The Plaintiff was subject to unwelcome harassment by Tomeka Allen  based on gender.

138. Also, the Plaintiff was discriminated against disparate treatment in that Ms. Allen stated the policy is that "all men" must perform after school-duty outside" while the women were to stay inside. The Plaintiff has been subject more to the elements of rain, heat and cold while the women did not have to be outside monitoring. In sum, women teachers were allowed to forgo duties that their male counterparts had to follow.

139. Also, the Plaintiff and Mr. Sneed the other male teacher were given disproportionate amount of students with discipline problems while the woman teacher who could not speak spanish was given a class almost predominately full of hispanic students with few blacks who for that area as a whole were less inclined to misbehave in class, in line and cafeteria and have far less discipline problems than some of their African American students. This had a disparate impact on the second grade men

140. The Plaintiff alleges this was done because he was "a man" and could handle them"  the school even transferred a student who was suffering from ADHD who was on medication  to the Plaintiff's room from the female teachers room.

141. PLAINTIFF has suffered special damages including but not limited to past and future loss of income, benefits, medical expenses, and other damages to be proven at time of trial.  As a direct and proximate result of the unlawful conduct of Defendants Shelby County, Laura Deakins, Cheryl Estes, Lewis Thomason and Jamie Gibber  and/or DOES 1-25, and each of them, PLAINTIFF has suffered general damages including but not limited to shock, embarrassment, physical distress and injury, humiliation, emotional distress, stress and other damages to be proven at the time of trial.

**COUNT SEVEN  Mr. Brown's Defamation-Libel Claim against the District**

All other allegations in this complaint are incorporated herein by reference

All Defendants

142. Mr. Brown's evaluation scores were fraudulently changed after he filed a lawsuit and engaged in a protected activity.  Plaintiff initially scored 3 but the district changed Plaintiff's scores to a 1 and a 2.   Defendants deceived the federal and state courts with these scores.  They also tell any prospective school district that asks from New York to California that Kim Brown is unworthy of employment because of said low evaluation scores

143.   Tomeka Allen's statements in the letters given May 23, 2013 but had various dates were false and constitute defamation per se. The PAR teacher Ms. Kecia Helminski defamed the Plaintiff by stating amongst other things that she observed the Plaintiff for 10.5 hours when she knew she had not and never gave any strategies to the Plaintiff

144.   She recommended the Plaintiff for termination when she had not one post-conference with her supervisor and never gave any feedback on anything the Plaintiff was doing wrong, when she was there to assist first then to evaluate later.

145.   Mr. Brown was damaged by this and Tomeka Allen's statements including the allegations she made in some of the Plaintiff's evaluations where she stated the students were acting out and the lesson was below standards when the video does not show this.   Not one single district would hire Mr. Brown after revealing termination by Shelby County Schools.  Plaintiff has suffered  injury in standing in the community, humiliation, or emotional distress  from being terminated from his teaching position of ten years.

146.  It was foreseeable that the negligent service or advice by the attorneys to change the Plaintiff's evaluation scores and falsify elements of prior litigation

could cause harm to others. Also the Defendants in collusion with one another caused to be published multiple statements accusing the Plaintiff of inappropriate behavior and mocking the elements of prior litigation by the Plaintiff that was over ten years old.  Several of the statements were outright falsehoods.   The statements that did have truth were twisted to make the Plaintiff look bad before the Court.

147. PLAINTIFF has suffered special damages including but not limited to past and future loss of income, benefits, medical expenses, and other damages to be proven at time of trial.  As a direct and proximate result of the unlawful conduct of Defendants Shelby County, Laura Deakins, Cheryl Estes, Lewis Thomason and Jamie Gibber  and/or DOES 1-25, and each of them, PLAINTIFF has suffered general damages including but not limited to shock, embarrassment, physical distress and injury, humiliation, emotional distress, stress and other damages to be proven at the time of trial.

**COUNT EIGHT  Mr. Brown's False Light-Libel Claim against the District**
All other allegations in this complaint are incorporated herein by reference
All Defendants

148.  Mr. Brown's evaluation scores were fraudulently changed after he filed a lawsuit and engaged in a protected activity.  Plaintiff initially scored 3 but the district changed Plaintiff's scores to a 1 and a 2.   Defendants deceived the federal and state courts with these scores.  They also tell any prospective school district that asks from New York to California that Kim Brown is unworthy of employment because of said low evaluation scores

149.  Tomeka Allen's statements in the letters given May 23, 2013 but had various dates were false and constitute defamation per se. The PAR teacher Ms. Kecia Helminski defamed the Plaintiff by stating amongst other things that she observed

the Plaintiff for 10.5 hours when she knew she had not and never gave any strategies to the Plaintiff

150.   She recommended the Plaintiff for termination when she had not one post-conference with her supervisor and never gave any feedback on anything the Plaintiff was doing wrong, when she was there to assist first then to evaluate later.1

151.  Mr. Brown was damaged by this and Tomeka Allen's statements including the allegations she made in some of the Plaintiff's evaluations where she stated the students were acting out and the lesson was below standards when the video does not show this.

152. Not one single district would hire Mr. Brown after revealing suspension by Shelby County Schools.  Plaintiff has suffered  injury in standing in the community, humiliation, or emotional distress  from being terminated from his teaching position of ten years.

153.  Also the Defendants in collusion with one another conspired and caused to be published multiple statements accusing the Plaintiff of inappropriate behavior and mocking the elements of prior litigation by the Plaintiff that was over ten years old. Several of the statements were outright falsehoods.

154. The statements that did have truth were twisted to make the Plaintiff look bad before the Court. It was foreseeable that the negligent service or advice by the attorneys to change the Plaintiff's evaluation scores and falsify elements of prior litigation could cause harm to others.


155. PLAINTIFF has suffered special damages including but not limited to past and future loss of income, benefits, medical expenses, and other damages to be proven at time of trial.  As a direct and proximate result of the unlawful conduct of Defendants Shelby County, Laura Deakins, Cheryl Estes, Lewis Thomason and

Jamie Gibber  and/or DOES 1-25, and each of them, PLAINTIFF has suffered general damages including but not limited to shock, embarrassment, physical distress and injury, humiliation, emotional distress, stress and other damages to be proven at the time of trial.

**COUNT NINE Mr. Brown's Aiding and Abetting Tort of Another Against the District Collusion/In-Concert With Each Other**

 All other allegations of this Complaint are incorporated herein by reference (Against ALL Defendants Shelby County, Lewis Thomas, Laura Deakins, and Jamie Gibber and DOES 1-25)

156. The law firms Lewis Thomas  and counselsLaura Deakins, and Jamie Gibber knew that Shelby County falsified the Plaintiff's evaluation scores but they were desperate for the compensation from Shelby County.  Attorneys would never file an affidavit stating that the Plaintiff scored a 1 and a 2.  The Defendants had a duty of care to make sure that their documents produced in Court were genuine.

157. The Client Shelby County breached the duty of Care owed to Mr. Brown by producing fraudulent documents in Federal and State Court.  The lawyers assisted Shelby County by this malicious prosecution when *they kne*w the evidence did not support such. The lawyers *knew that* Shelby County and the principal produced bogus letters, fraudulent evaluation scores  supporting dismissal also. The Plaintiff has suffered immense damages, mental anguish,  and they destroyed Plaintiff's teaching career over such.  Plaintiff is also seeking an F.B.I. investigation into this matter.  They also falsified elements of prior litigation by the Plaintiff that was over ten years old.

158. It was foreseeable that the negligent service or advice by the attorneys to change the Plaintiff's evaluation scores and falsify elements of prior litigation could cause harm to others.

159. Shelby County Schools advised Tomeka Allen to forge letters along with the PAR teacher to uphold the Plaintiff's dismissal

Each of them substantially assisted each other or encouraged each other in accomplishing tortious conduct. Each of them aided and abetted each other's tortious conduct proximately causing damage to Mr. Brown

160. PLAINTIFF has suffered special damages including but not limited to past and future loss of income, benefits, medical expenses, and other damages to be proven at time of trial.  As a direct and proximate result of the unlawful conduct of Defendants Shelby County, Laura Deakins, Cheryl Estes, Lewis Thomason and Jamie Gibber  and/or DOES 1-25, and each of them,

161.  PLAINTIFF has suffered general damages including but not limited to shock, embarrassment, physical distress and injury, humiliation, emotional distress, stress and other damages to be proven at the time of trial.


**COUNT TEN  Civil Conspiracy against the District**

All other allegations of this Complaint are incorporated herein by reference

(Against ALL DEFENDANTS and DOES 1-25)

162. Shelby County has a history of cheating.    Shelby County  and the attorneys knew that Plaintiff did not score a 1 and 2.   Shelby County fabricated an entire policy stating Plaintiff's score of a 3 was only his preliminary score.

163.  **The attorneys knew that Plaintiff did not score a 1 and 2.**  They told the Federal Courts and the Tennessee Supreme Court that Plaintiff scored a 1 and 2. They assisted Shelby County by this malicious prosecution simply for monetary gain instead of dropping the client.  These    lawyers focused only on their client's

needs, desires, and expectations, without looking at the consequences of what is being accomplished despite them knowing.  They knew Shelby County would not state in an affidavit what the Plaintiff's scores were.    These lawyers breached their fiduciary duty for personal gain.

164. At relevant times the Defendants committed (retaliation common law whistle-blowing and defamation that injured  Plaintiff. Each of them knew that Plaintiff scored 3's yet they conspired to change the Plaintiff's evaluation scores to a 1 and a 2.

165.  Tomeka Allen and the PAR teacher knew that each of them was engaged in tortious conduct when the PAR teacher collaborated with Shelby County to cheat and  forged/letters for dismissal .

166.   Each of them substantially assisted each other or encouraged each other in accomplishing tortious conduct. Each of them aided and abetted each other's tortious conduct proximately causing damage to Mr. Brown

 The attorneys made it personal and went beyond their professional duties and aided Shelby County

167. PLAINTIFF has suffered special damages including but not limited to past and future loss of income, benefits, medical expenses, and other damages to be proven at time of trial.  As a direct and proximate result of the unlawful conduct of Defendants Shelby County, Laura Deakins, Cheryl Estes, Lewis Thomason and Jamie Gibber  and/or DOES 1-25, and each of them, PLAINTIFF has suffered general damages including but not limited to shock, embarrassment, physical distress and injury, humiliation, emotional distress, stress and other damages to be proven at the time of trial.


**COUNT ELEVEN CIVIL RICO RACKETEERING**
federal law (18 U.S. Code § 1962(D)),

All other allegations of this Complaint are incorporated herein by reference
(Against ALL DEFENDANTS and DOES 1-25)

168.     Shelby County, Lewis Thomas, Laura Deakins, and Jamie Gibber, these
conspirators crossed the line and became part of the criminal organization itself.
The defendants all acted in-concert and colluded with their co-conspirators and one
another to fraudulently Cheat and  produce documents in Federal and State Court
and get Plaintiff terminated to boost their referrals and resume.

169.  All Defendants took  the cheating from the Classroom to the Courtroom. To
sustain their dishonesty Shelby County started stating the original scores a 3 were
only the Plaintiff's preliminary scores. That Plaintiff scores changed over the
summer when TCAP scores came back.  The TCAP scores in 2013 came back
before May 23 the last day of school.

170. The lawyers knew that Shelby County was engaging in fraud.  They knew
Shelby County would never produce an affidavit or declaration stating what the
Plaintiff's scores were, yet they continued to maliciously prosecute the Plaintiff
and present these documents on behalf of Shelby County in Federal Court.

171. Shelby County has a pattern of alleged "cheating" when convenient.  As
demonstrated by the rehiring of ex-principal Tracey Greer who conspired to get
only  "10 N-Words" to do well on state testing.  The allegations made by
ex-principal Ronnie Macklin of cheating previously outlined and that were proven
by law firm Butler Snow and that Shelby County acknowledges were true after
denying by Dorsey Hopson.

172.  Also commentary by local news WREG stating:  "The cheating at Trezevant
involved some 53 students – many of them football players. And some students
received diplomas when they didn't earn them. Hopson is justified in being angry,
but that's not enough. The district has an obligation to determine how widespread

the cheating was, and if that results in criminal charges, so be it."    See Attached
Exhibit 1)

https://wreg.com/news/sanford-scs-is-obligated-to-determine-prevalence-of-cheati
ng/

173.  No one has ever been criminally held accountable despite the true findings
by Butler Snow law firm sustaining the allegations.  Then Superintendent Doresy
Hopson got a bonus of $15,000 for allegedly "improving test scores"  The
Defendants carried their cheating and racketeering from the Classroom to the
Courtroom all under then Dorsey Hopson who ironically decided to leave the next
year. Under Dorsey cheating allegations were widespread.

174.     Doresy came to Memphis from the school district in Atlanta where the
Superintendent Beverley Hall  and other teachers were criminally indicted  alleging
she orchestrated a scheme to inflate achievement-test scores for thousands of
Atlanta students.   Prosecutors used criminal RICO to indict. (See Attached Atlanta
Cheating Article)

175.   The Defendants carried their cheating and racketeering from the classroom
to the Courtroom.  The Defendants purposely and intentionally changed Plaintiff's
evaluation score from all 3's to a 1 and 2 and presented this information in Federal
Court and State Court as if such was Plaintiff's genuine overall observation scores.

176. The Lawyers knew or should have known that Shelby County was engaging
in widespread criminal racketeering of cheating; Changing grades, awarding fake
diplomas, changing a teachers evaluation score at will, cheating on state tests,  only
allowing only members of certain Black sororities or fraternities in high paying
district jobs.   They were hungry for money and referrals.  The Plaintiff himself
was asked to cheat but declined.

177.  Shelby County Schools  was indeed a racketeering influenced and corrupt organization; with cheating, racial slurs, allowing a White principal Ronnie Mackin at Trezevant High a Black school,  to be harassed because he wouldn't "play their game"   This stuff was all over the news the attorneys knew what they were getting into.  (See Exhibit 1)

178.  Plaintiff repeatedly cautioned the lawyers and Shelby County that they were producing fraudulent documents in Court. That his observation scores were falsified.  That test scores came back before Plaintiff received his observation score of a 3.  The defendants dismissed Plaintiff's accusations as a disgruntled former employee and committed the malicious prosecution of Plaintiff in concert and collusion with Shelby County Schools.  Plaintiff was injured and suffered loss as a direct result of their actions

179. PLAINTIFF has suffered special damages including but not limited to past and future loss of income, benefits, medical expenses, and other damages to be proven at time of trial.  As a direct and proximate result of the unlawful conduct of Defendants Shelby County, Laura Deakins, Cheryl Estes, Lewis Thomason and Jamie Gibber  and/or DOES 1-25, and each of them, PLAINTIFF has suffered general damages including but not limited to shock, embarrassment, physical distress and injury, humiliation, emotional distress, stress and other damages to be proven at the time of trial.

**COUNT TWELVE**

 **Negligent Supervision against the District**

.All other allegations of this Complaint are incorporated herein by reference (Against Shelby County and DOES 1-25)

180.  Mr. Brown's evaluation scores were fraudulently changed after he filed a lawsuit and engaged in a protected activity.  Plaintiff initially scored 3 but the district changed Plaintiff's scores to a 1 and a 2.

181.  A duty of care was owed to the Plaintiff to make sure the PAR teacher was performing her duty and regularly doing post-conferences to assist the Plaintiff and give feedback. The PAR teacher neglected that duty and did not conduct any post-conferences except one time with the Plaintiff and no advice was given.

182.  Also the PAR teacher fraudulently recommended the Plaintiff for termination when she had not performed any of her duties which were to assist the Plaintiff. As a result of such the Plaintiff has been damaged by their negligent conduct.

183.  A duty of care was owed to make sure that Tomeka Allen, a first year principal anywhere knew properly how to evaluate teachers. Mrs. Alen did not know how. Some teachers were given high scores when they did not follow the rubric and others were given low scores including the Plaintiff when they did follow the rubric for evaluation

184. PLAINTIFF has suffered special damages including but not limited to past and future loss of income, benefits, medical expenses, and other damages to be proven at time of trial.  As a direct and proximate result of the unlawful conduct of Defendants Shelby County  and/or DOES 1-25, and each of them, PLAINTIFF has suffered general damages including but not limited to shock, embarrassment, physical distress and injury, humiliation, emotional distress, stress and other damages to be proven at the time of trial.


**COUNT THIRTEEN Negligent Training against the District**

All other allegations in this complaint are incorporated herein by reference
Defendant Shelby County

185. A duty of care was owed to the Plaintiff to ensure that his evaluation scores were not fraudulently changed. They should not have been so easily accessed to be fraudulently changed. Shelby County breached that duty of care by allowing the alleged cheating in the classroom to take place in the Courtroom.  The Plaintiff has suffered immense damages to his career and reputation from the termination on December 20, 2023.

186.  Mr. Brown's evaluation scores were fraudulently changed after he filed a lawsuit and engaged in a protected activity.  Plaintiff initially scored 3 but the district changed Plaintiff's scores to a 1 and a 2.

187.   A duty of care was owed to the Plaintiff to make sure the PAR teacher and principal Tomeka Allen was adequately trained to evaluate teachers, was performing her duty and regularly doing post-conferences to assist the Plaintiff. The PAR teacher and Ms. Tomeka Allen were not adequately trained to do observations whereby teachers' livelihood depends on such. More training was needed to recommend a teacher for firing.   (See Youtube Video of Plaintiff Teaching Students)

188.  PLAINTIFF has suffered special damages including but not limited to past and future loss of income, benefits, medical expenses, and other damages to be proven at time of trial.  As a direct and proximate result of the unlawful conduct of Defendants Shelby County  and/or DOES 1-25, and each of them, PLAINTIFF has suffered general damages including but not limited to shock, embarrassment, physical distress and injury, humiliation, emotional distress, stress and other damages to be proven at the time of trial.


**COUNT FOURTEEN Breach of Contract  Common Law Twelve**

All other allegations of this Complaint are incorporated herein by reference Defendant Shelby County

189    The Defendant fraudulently changed the Plaintiff's evaluation scores after he filed a lawsuit against the District. Mr. Brown's evaluation scores were fraudulently changed after he filed a lawsuit and engaged in a protected activity. Plaintiff initially scored 3 but the district changed Plaintiff's scores to a 1 and a 2.

190.    The Plaintiff had a contract with the District that his continued employment be based on satisfactory job performance etc.  The Plaintiff had been teaching continuously for ten years and did nothing to breach his contract but rather  he earned an overall TEM score of a "3"  for two years straight which is meeting expectations.

191.    The districts actions were pretextual and it maliciously breached the Plaintiff's contract based on fraudulent letters submitted by Tomeka Allen 153 This breach was a proximate result of the District's conduct and the Plaintiff has been injured a suffered a suspension without pay and recommendation for termination and the Plaintiff has suffered emotional distress damages. Otherwise the Plaintiff has been injured.

192.  PLAINTIFF has suffered special damages including but not limited to past and future loss of income, benefits, medical expenses, and other damages to be proven at time of trial.  As a direct and proximate result of the unlawful conduct of Defendants Shelby County  and/or DOES 1-25, and each of them, PLAINTIFF has suffered general damages including but not limited to shock, embarrassment, physical distress and injury, humiliation, emotional distress, stress and other damages to be proven at the time of trial.


**COUNT FIFTEEN FRAUD**

All other allegations in this complaint are incorporated herein by reference

All Defendants

193.   The District fraudulently changed the Plaintiff's evaluation scores after he filed a lawsuit. Mr. Brown's evaluation scores were fraudulently changed after he filed a lawsuit and engaged in a protected activity.  Plaintiff initially scored 3 but the district changed Plaintiff's scores to a 1 and a 2.

194.   Ms. Allen gave the Plaintiff four forged letters on May 23 a day after the students had left for summer vacation.  Each letter had a different date. Two letters were from May 1, 2013, March 25, 2013 and April 25, 2013 but were only given on May 23, 2013.  The contents of the letters were untrue and Tomeka Allen tried to dress the letters as though she had given the letters to the Plaintiff on the dates stated.

195.   PLAINTIFF has suffered special damages including but not limited to past and future loss of income, benefits, medical expenses, and other damages to be proven at time of trial.

196.   As a direct and proximate result of the unlawful conduct of Defendants Shelby CountyLaura Deakins, Cheryl Estes, Lewis Thomason and Jamie Gibber and/or DOES 1-25, and each of them, PLAINTIFF has suffered general damages including but not limited to shock, embarrassment, physical distress and injury, humiliation, emotional distress, stress and other damages to be proven at the time of trial.


**COUNT SIXTEEN**

**Implied Covenant of Good Faith and Fair Dealings**

 All other allegations of this Complaint are incorporated herein by reference

Defendant Shelby County

197.  The Defendants fraudulently changed the Plaintiff's evaluation scores after he filed a lawsuit.  The Defendants have a history of encouraging cheating as outlined previously.  The Defendants violated the "spirit" of the contract Plaintiff had with Shelby County Schools be fraudulently changing Plaintiff's evaluation scores to a 1 and 2 despite

198.   The Plaintiff joined Memphis City Schools with the understanding that this would be his career and place to retire. The Plaintiff is a tenured teacher and his contract was guaranteed on the basis of satisfactory performance. The Plaintiff has been consistently meeting expectations. The district has dozens of vacancies in the hard to fill area of special education and ESL

199.  The Plaintiff became licensed in April 2013 in special education and was not given an opportunity to practice in this area. The Plaintiff's employment was terminated on false allegations and false letters, false evaluation scores of a 1 and 2, bogus policy of "preliminary score"  to uphold termination.  Such was pretextual and done to the Plaintiff with malice and the Plaintiff has suffered damages from said conduct, including general and special.

200.  PLAINTIFF has suffered special damages including but not limited to past and future loss of income, benefits, medical expenses, and other damages to be proven at time of trial.  As a direct and proximate result of the unlawful conduct of Defendants Shelby County  and/or DOES 1-25, and each of them,

201. PLAINTIFF has suffered general damages including but not limited to shock, embarrassment, physical distress and injury, humiliation, emotional distress, stress and other damages to be proven at the time of trial.


**COUNT SEVENTEEN Retaliation Violations of Tennessee Public Protection Act T.C.A. 50-1-304 Against the District**

All other allegations of this Complaint are incorporated herein by reference
Defendant Shelby County

202. Mr. Brown refused to participate in any cheating on state tests at Memphis
City Schools.  Cheating is unfair to the students and teachers.  Plaintiff was directly
asked at a team meeting about providing "a little extra assistance" on the test to
which was a code word for cheating.

203. Had Plaintiff engaged in cheating Plaintiff would have had strong observation
scores and would possibly have been a level 5 teacher not a level three teacher.
The Plaintiff was ultimately fired for low observation scores.   However, the
Plaintiff made a 3 which is meeting expectations. Shelby County changed the
Plaintiff's observation scores and terminated the Plaintiff for engaging in a
protected activity of filing a lawsuit and changed the Plaintiff's evaluation scores
to a 1 and a 2.

204.   Mr. Brown reported illegal activities involving the public school children. He
refused to be silent concerning that corporal punishment was still being used and
the secretary was assaulted. The Plaintiff also notified proper school personnel
Charjean and that the windows in the school were screwed shut and spoke out
against this to the building engineer who stated Mr. Allen wants them shut.  Mr.
Brown refused to engage in corporal punishment.

205.  Mr. Brown was  also asked for a transfer and someone else to evaluate him.
Tomeka Allen called the Plaintiff into her office the next day and started yelling at
the Plaintiff.  The Plaintiff received a low evaluation the next day and was
ultimately recommended for termination based on forged letters and is currently
suspended without pay as a result of engaging in this protected activity involving
public schoolchildren.

206. PLAINTIFF has suffered special damages including but not limited to past and future loss of income, benefits, medical expenses, and other damages to be proven at time of trial.  As a direct and proximate result of the unlawful conduct of Defendants Shelby County, Laura Deakins, Cheryl Estes, Lewis Thomason and Jamie Gibber  and/or DOES 1-25, and each of them,

207. PLAINTIFF has suffered general damages including but not limited to shock, embarrassment, physical distress and injury, humiliation, emotional distress, stress and other damages to be proven at the time of trial.

**COUNT EIGHTEEN ABUSE OF PROCESS CLAIM**

All other allegations of this Complaint are incorporated herein by reference Defendants:ALL DEFENDANTS  Cheryle Rummage Estes, Laura Deakins, Jamie Gibber,  Lewis Thomason P.C., Shelby County Schools

208. Defendants lost to Mr. Brown and were liable to Plaintiff for around $500,000. The Defendants started  harassing the Plaintiff's in their writings more than once and as recently as August 2023.   The Plaintiff voluntarily gave them information about his involvement in prior civil litigation.   The information was over 10 years old in August 2023.

209.  The Defendants deliberately harassed the Plaintiff with a malicious goal of increasing attorney fees and the costs of litigation.   There was no legal reason for including the Plaintiff's prior litigation. They took bits and pieces from some of the Plaintiff's previous litigation that was over ten years old at the time and twisted

this Civil litigation just to harass the Plaintiff and make him look like a criminal in front of the Court.   Some of the wording that was included was the following. They started ridiculing   the Plaintiff for a "Botched medical procedure "ruined his chances of becoming friends with a beautiful woman behind him…

210. The attorneys just out of the blue stated to the Court that Plaintiff tried to hide his age and sneak into a college campus to date a student.  This was not true at all and the record does not show this and nothing in the complaint, trial transcript, deposition or any discovery shows this.

211. It is totally unbelievable  that they would state this.  That case went to trial and the Defendants did not purchase the trial transcript.  The Defendants made numerous other statements about the Plaintiff similar to the two the Plaintiff listed run in with campus security "Brown attempting to hide his non student status so he could take a woman 17 years his junior out to lunch"

212.  Even facts that may have been true on the surface, they twisted the facts on this page and left out certain omissions to make the Plaintiff look bad.  There are a lot more similar twisted facts the Defendants brought up..   (See Exhibit 3 Where Defendants Abused Process)

213.  They presented such in a way to make the Plaintiff look like a criminal rather than a teacher.   The attorneys did this to harass the Plaintiff and nothing more. None of this was brought up in discovery and had never been mentioned previously.  They caused the Plaintiff harassment and emotional distress.   And such was

214. Shelby County Schools,, Lewis Thomason, Cheryle Rummage Estes, Laura Deakins, Jamie Gibber,  They presented this information that Plaintiff voluntarily disclosed in discovery to harass the Plaintiff and cause unnecessary attorney and legal fees from the Plaintiff. Shelby  Defendants were angry that Plaintiff for Attorney fees against them for trying to cheat the legal system.  The

misrepresented the Plaintiff to the Court for improper purposes and to harass the
Plaintiff

215.  The Defendant's included  Mr. Brown's civil cases that were over ten years
old at the time for the sole purpose of disparaging Mr. Brown.  Defendants
assertions concerning Mr. Brown's previous legal history are pure
subterfuge, included for no other purpose than to negatively portray Mr.
Brown and drive up litigation costs.

216. This was  a teacher tenure case and clearly Mr. Brown was not terminated for
his prior litigation history. If he was terminated for his prior litigation history,it was
not included in the Notice of Charges that were presented to the Shelby County
Board of Education for approval.

217.  Defendant's in their brief on appeal failed to cite to the record where Mr.
Brown's litigation history was considered in his wrongful termination.  Because it
was not. Rule 27(a)(7)(failure to make appropriate references to the record
constitutes waiver of the issue). As a result, this Court must assume that Mr.
Brown's litigation record was only included for improper purposes, and harassment
and Defendants are liable to the abuse of process for this inappropriate conduct.


 218**. WHEREFORE** PLAINTIFF has suffered special damages including but not
limited to past and future loss of income, benefits, medical expenses, and other
damages to be proven at time of trial.  As a direct and proximate result of the
unlawful conduct of Defendants Shelby County  and/or DOES 1-25, and each of
them, PLAINTIFF has suffered general damages including but not limited to
shock, embarrassment, physical distress and injury, humiliation, emotional distress,
stress and other damages to be proven at the time of trial.

219. Against Defendants Shelby County, Laura Dunkins, Jamie Gibber, Cheryl Estes and/or DOES 1-25, as set forth above in detail. PLAINTIFF is, therefore, entitled to recover punitive damages from Defendants in an amount according to proof at trial.  Defendants' conduct described herein was undertaken, authorized and/or ratified by Defendants' officers, directors and board members. The aforementioned conduct of said officers, directors and/or board members and individuals was therefore undertaken on behalf of Defendants.

 220.  Defendants further had advanced knowledge of the actions and conduct of said individuals whose actions and conduct were ratified, authorized and approved by Defendant Shelby County officers, directors and/or managing agents, Laura Deakins, Jamie Gibber, Cheryl Estes and other individuals whose precise identities are unknown to PLAINTIFF at this time and are therefore identified and designated herein as DOES 1 through 25, inclusive.

230. As a result of the conduct of Defendants Shelby County and/or DOES 1-25, and each of them, PLAINTIFF will possibly be forced to retain an attorney in order to protect his rights. Accordingly, PLAINTIFF seeks the reasonable attorneys' fees and costs incurred in this litigation in an amount according to proof at trial. WHEREFORE, PLAINTIFF prays for judgment as set forth below.

**PRAYER FOR RELIEF**

231.  **WHEREFORE** The Plaintiff demands trial by jury, attorney fees, PLAINTIFF makes the following demand: As to each cause of action set forth herein,  d) That PLAINTIFF have and recover a judgment against Defendants for punitive damages in an amount to be determined at trial malicious oppression sufficient to punish, penalize and/or deter Defendants;

232. e) That PLAINTIFF have and recover a judgment against Defendants in an amount to be determined at trial for expenses of this litigation, including, but not limited to, reasonable attorney's fees and costs; and amount no less than 1 million dollars for any cause of action submitted to the jury for trial;

233. Plaintiff prays for treble damages f) That PLAINTIFF have and recover a judgment against Defendants for all prejudgment and post-judgment interest; and

234.  g) That PLAINTIFF have such other relief as provided for by law and/or this Court deems just and proper. As  set forth herein, PLAINTIFF prays: a) That process be issued and served as provided by law, requiring Defendants to appear and answer or face judgment;

235.  b) That PLAINTIFF have and recover judgment against Defendants in an amount to be determined at trial by no less than than all backpay for said Plaintiff times three and  as special, actual, compensatory and/or nominal damages for their wrongful conduct; c) That PLAINTIFF have and recover judgment against Defendant in an amount to be determined at trial as general damages for their wrongful conduct;


Respectfully Submitted,


Kim Brown

*Kim Brown*


# EXHIBIT 1

**NEWS ARTICLES ON CHEATING AT SHELBY COUNTY SCHOOLS**


Commentary Local News On Cheating at Shelby County Schools

https://wreg.com/news/sanford-scs-is-obligated-to-determine-prevalence-of-cheating/


Principal Tracey Greer **Rehired** After Calling Students N-Words, Conspiring to Cheat Caught On Secret Audio

https://www.commercialappeal.com/story/news/2019/01/04/memphis-principal-tracie-boyd-greer-rig-state-tests-n-word/2483064002/


Traci Greer Resigns After Calling Students N-Words, Cheating

https://www.actionnews5.com/story/25469943/audio-recording-reveals-principal-refer-to-students-in-derogatory-manner/

https://www.actionnews5.com/story/25478958/community-former-teachers-leaders-speak-out-over-principals-resignation/


News Article on Ronnie Macklin accusations on Cheating

https://www.localmemphis.com/article/news/local/shelby-county-schools-looking-at-former-trezevant-principal-claims/522-e31c3921-0506-4931-bf7d-4e8ae33c4bf8

https://www.fox13memphis.com/news/former-scs-principal-alleges-academic-scandal-corruption-at-trezevant-high-school/article_8d69c0a5-8796-51e8-894b-4bd179dc229d.html

https://www.actionnews5.com/story/37012737/investigation-reveals-significant-transcript-changes-at-trezevant/

Principal Ronnie Mackin's Resignation Letter

https://www.documentcloud.org/documents/3765038-Mackin-SCS-Resignation.html

https://www.chalkbeat.org/tennessee/2017/6/6/21099909/what-we-know-so-far-about-an-alleged-grading-scandal-in-memphis-and-why-it-s-not-as-unusual-as-you-m/

https://www.commercialappeal.com/story/news/education/2017/06/01/trezevant-principal-who-uncovered-grading-scandal-resigns/363269001/

## LAW FIRM  INVESTIGATING STATES SHELBY COUNTY DID ENGAGE IN CHEATING! EX-PRINCIPAL RONNIE MACKIN WAS TELLING THE <u>TRUTH</u>

https://www.localmemphis.com/article/news/local/shelby-county-schools-report-on-grade-scandal/522-fbaaf96d-cc69-4525-acdf-78c9d0dba782

Dorsey Hopson Switches and States Criminal Charges Possible Because of District Cheating, **After Previously Denying Ronnie Macklin's** Claims

https://www.chalkbeat.org/tennessee/2017/12/13/21103976/hopson-says-more-firings-possible-as-investigators-dig-deeper-into-memphis-grade-changing/

**Kingsbury High Accused of improperly Changing Grades**

https://www.chalkbeat.org/tennessee/2018/6/26/21105259/kingsbury-high-teacher-accuses-memphis-principal-of-improper-grade-changing/#:~:text=Kingsbury%20High%20School%20is%20the,increase%20the%20number%20of%20graduates.

**Hamilton High School Engaged in Cheating**

https://www.chalkbeat.org/tennessee/2018/1/30/21104275/memphis-high-school-principal-demoted-over-improper-grade-changes/

**Retired Teacher Admits to Changing Grades and Cheating**

https://www.fox13memphis.com/news/retired-scs-teacher-i-fudged-grades/article_661af18b-fecd-5218-95ad-3dfbdf340131.html

https://www.localmemphis.com/article/news/local/retired-scs-teacher-says-grade-changing-also-happened-at-her-school/522-38baa4a4-8c7c-4d6e-8f8f-ea511fff36f6

**Principal Terry Ross Accused of Cheating**

https://tri-statedefender.com/at-least-five-educators-accused-memphis-principal-of-pressuring-to-pass-students/08/15/

https://www.localmemphis.com/article/news/local/kingsbury-high-school-principal-file-shows-multiple-grievances/522-e56acc44-44b8-477b-aece-7a328d188a87

https://www.chalkbeat.org/tennessee/2019/8/2/21108600/memphis-principal-gets-new-assignment-after-probe-into-harassment-and-grade-changing-at-kingsbury-hi/

**Atlanta School District Superintendent Beverly Hall Indicted**

https://www.cnn.com/2013/04/02/justice/georgia-cheating-scandal/index.html

https://www.businessinsider.com/atlanta-cheating-indictment-beverly-hall-2013-4

https://www.washingtonpost.com/education/2022/02/01/atlanta-cheating-schools-scandal-teachers/

https://apnews.com/general-news-a831de73e41c4810a1581a5d89aede71